MASON BOX COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89312. Filed November 8, 1962.

*Walter F. Gibbons, Esq.,* for the petitioner.
*Frederick A. Griffen, Esq.,* for the respondent.

#### OPINION.

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the calendar years 1956 and 1957 in the respective amounts of $3,688.10 and $1,828.03.

In paragraph (4) of the petition petitioner assigns two errors as follows:

(a) The Commissioner erroneously disallowed for the calendar year 1956 a deduction for claimed charitable contributions in the amount of $9,000.00.

(b) The Commissioner erroneously disallowed for the calendar year 1957 a deduction for a claimed charitable contribution carryover from the year 1956 under the provisions of Section 170(b)(2) of the [1954] Internal Revenue Code.

In paragraph (5) of the petition petitioner makes the following allegation:

(e) Said release or abandonment of petitioner's claim for reimbursement, as stated above, constituted a charitable contribution made in the calendar year 1956 within the meaning of Section 170 of the [1954] Internal Revenue Code. Alternatively, petitioner alleges that said release or abandonment constituted an ordinary and necessary business expense paid or incurred during the calendar year 1956 under the provisions of Section 162(a) of the [1954] Internal Revenue Code.

The facts were stipulated and are so found.

Petitioner is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal office and place of business in Attleboro Falls, Massachusetts. It filed its income tax returns for the calendar years 1956 and 1957 on an accrual basis with the district director of internal revenue for the district of Massachusetts.

In determining the deficiencies herein the respondent increased the taxable income as disclosed by the returns by $8,255.72 ($9,000 less carryover of $744.28) for 1956, and $744.28 for 1957 (total for both years, $9,000) and, in a statement attached to the deficiency notice, he explained his determination thus:

It has been determined that claimed deductions aggregating $9,000.00 for the taxable year ended December 31, 1956 for alleged contributions to the following charitable organizations do not constitute allowable deductions under section 170 of the Internal Revenue Code of 1954:

| Charity | Amount |
| --- | --- |
| Mount Hope Cemetery | $750.00 |
| American Red Cross | 450.00 |
| North Attleborough District Nursing Association | 450.00 |
| First Baptist Church of North Attleborough | 1,500.00 |
| Central Congregational Church of Attleborough Falls | 300.00 |
| Town of North Attleborough for municipal parks | 750.00 |
| Town of North Attleborough for Public Library | 450.00 |
| The Board of Selectmen—for World War Veteran's Memorial | 750.00 |
| North Attleborough Historical Society | 1,500.00 |
| Attleborough Hospital Association | 1,500.00 |
| American Legion of North Attleborough | 300.00 |
| Girls Scouts of North Attleborough | 150.00 |
| Boy Scouts of North Attleborough | 150.00 |
| Total | 9,000.00 |

It has further been determined in view of the above that you are not entitled to a claimed deduction of $744.28 on your return for the taxable year ended December 31, 1957 under the provisions of section 170 of the Internal Revenue Code of 1954.

The articles of organization of petitioner at all times material herein contained the following provisions:

No sale, pledge or transfer of the stock of this corporation shall be valid unless the same shall have been first offered in writing to the corporation through the Treasurer at par; and the corporation shall have the refusal or right of pre-emption at such price, and ten days shall be allowed for the corporation to purchase or decline to purchase, by vote of the directors, and if it shall decide to purchase the same at said price, said seller shall, upon offer of such price duly transfer the same to the corporation. All transfers shall be made upon the books of the corporation by the holders in person, or by attorney thereunto duly authorized in writing.

The par value of petitioner's outstanding capital stock at all times material herein was $100 per share.

Ellen L. Mason died testate, a resident of Massachusetts, in September 1951. At the time of her death she owned 450 shares of the common stock of petitioner, having a par value of $45,000. The portions of Articles IV, V, and VI of the will of Ellen L. Mason, material herein, are as follows:

ARTICLE IV.

I give, devise and bequeath all my property not hereinbefore disposed of, real, personal or mixed, of whatsoever nature and wheresoever situated * * * but excepting (unless the same shall not pass under Article V of this will) my stock in the Mason Box Company * * * as follows:

[Here follow six paragraphs of specific legacies.]

7. Any balance remaining after payment of the foregoing legacies shall be paid as follows:

[Here follows, in 7(a) to 7(m), inclusive, designation of 13 named charities, each charity to receive from 1/60th to 10/60ths of the balance.]

ARTICLE V.

I give and bequeath all my shares of stock in the said Mason Box Company * * * subject to the conditions hereinafter set forth in Article VI with respect to taxes, to such of the following four individuals, all now associated with said Mason Box Company, as shall survive me and fulfill the condition imposed by said Article VI, in the proportions respectively set forth opposite their names:

Russell I. Rhodes, 120/425ths
Bonner D. Mason, 120/425ths
Russell L. Scott, 100/425ths
Charles S. Holden, 85/425ths

The share or shares of such of them as shall not survive me or shall not fulfill the said condition shall be divided among the others in the proportions represented by the numerators of the fractions opposite the names of the others. * * *

ARTICLE VI.

All estate, inheritance, succession, death, transfer or other taxes that shall be imposed upon or assessed against or with respect to any portion of my estate by reason of the inclusion in my estate of any part of the property bequeathed by Article V to the said Russell I. Rhodes, Bonner D. Mason, Russell L. Scott and Charles S. Holden, or any of them, or with respect to its transfer to any

of the said legatees, shall be paid by the legatee entitled thereto, and each of the said bequests is hereby made conditional upon such payment by such legatee. * * *

All other death taxes shall be paid from the residue of my estate passing under Article IV, paragraph 7.

The executors of the estate of Ellen L. Mason petitioned the Probate Court having jurisdiction for instructions as to whether the restriction on transfer contained in the articles of organization of petitioner was applicable with respect to the 450 shares of stock mentioned in Article V of decedent's will. The Probate Court ruled that the restriction was applicable and that the shares must be offered to petitioner in accordance therewith. On appeal, this ruling was affirmed by the Supreme Judicial Court of Massachusetts on April 2, 1953, in *Boston Safe D. & T. Co.* v. *North Attleborough Chapter of American Red Cross, et al.*, 330 Mass. 114, 111 N.E. 2d 447.

In accordance with the above opinion of the Supreme Judicial Court of Massachusetts, the 450 shares of stock mentioned in Article V of the will of Ellen L. Mason were transferred to petitioner by the executors of the estate of Ellen L. Mason for a consideration of $45,000.

In 1955 the Commonwealth of Massachusetts asserted that the effect of the provisions of the articles of organization of petitioner was a transfer taking effect at death for an insufficient consideration and assessed inheritance taxes against petitioner. Petitioner contested this determination.

On June 7, 1955, the board of directors of petitioner held a special meeting. The purpose of the meeting was to discuss a proposed settlement of the above assessment of inheritance taxes. It developed that there was no case law on the question in Massachusetts although the consensus of legal opinion was that the final decision would be against the Commonwealth. However, due to the necessity of long, expensive litigation in several courts, the directors were of the opinion that a settlement with the Commonwealth would be to the advantage of all parties concerned. The question of who should pay the amount of the settlement was also discussed at the meeting. The minutes of the meeting record, in part, the following:

The Vice President pointed out that the residue of Ellen Mason's estate was left to various charities including Boy Scouts, Church, and the Town of North Attleboro. It was pointed out that very bad publicity for the company would result if the company made claim against the estate which would be in effect a claim against the several charities even though the Probate Court rules that payment of the settlement was a legal charge against the estate. The attorneys for the estates have offered to pay a portion of the settlements, but the opinion was expressed that "The head lines would be just as black."

After thorough discussion of possibilities available it was

VOTED that the company pay to the Commonwealth of Massachusetts the following amounts in settlement of the Claims of the Commonwealth that inheri-

tance taxes are due because of the transfer of shares of the company from the estates listed to the company, as provided by the charter provisions and a subsequent agreement. Also that no claim for the amount of such payments be made against the estates, as such claims would injure the public relations of the company.

As a result of the above meeting, the controversy between petitioner and the Commonwealth was settled in 1955 by virtue of a written memorandum of agreement between the Massachusetts State Tax Commissioner and petitioner. The memorandum provided, in part, as follows:

Ellen L. Mason died in September 1951 owning 450 shares of Mason Box Company which were sold to the Company for $100 per share pursuant to charter provision that no transfer of the stock should be valid unless the stock were first tendered to the Company at par.

\* \* \* \* \* \* \*

The Commonwealth asserts that the effect of the charter provision and/or agreement is a transfer taking effect at death for an insufficient consideration and that Mason Box Company or its shareholders are liable for inheritance tax with respect to the shares in question.

There being no case law on the question in Massachusetts and the parties, believing that it is in the best interests of all concerned to compromise the matter rather than litigate it, have arrived at a settlement. The terms of the settlement are as follows:

The 450 shares of Mason Box Company will be included in the estate of Ellen L. Mason at $45,000 \* \* \* in computing inheritance tax in the usual way \* \* \*.

In addition, there will be assessed to Mason Box Company and that Company will pay promptly without interest (from its own funds and/or from funds of other parties interested in the question) $9,000 as transferee of Ellen L. Mason \* \* \*

All of the 13 legatees named in Article IV, paragraph 7, *supra*, of the will of Ellen L. Mason are organizations of the character described in section 170(c) of the Internal Revenue Code of 1954, contributions to which would be deductible after otherwise complying with the requirements of section 170 of said Code.

On July 29, 1955, petitioner addressed a letter to the Boston Safe Deposit and Trust Company of Boston, the body of which is, in part, as follows:

Mr. Carr has written that the Boston Safe Deposit and Trust Company would like written assurance from us that we do not intend to assert any claim against the Estate of Ellen L. Mason, as a result of the settlement agreed upon with the Commonwealth of Massachusetts for alleged taxes because of transfer of shares to this company.

As you know from attendance at various conferences, we do not feel that the tax is properly assessed, or that any tax should be paid. From several conferences it developed that a settlement with Massachusetts would be to the advantage of all concerned, rather than endure long litigation at considerable legal expense to all parties. It also appears that the consensus of opinion was that Mrs. Mason's will provided for the payment of all taxes. However, the attorney for the Estate felt it was necessary that instructions be obtained from the Probate Court. In

order that this might be accomplished it was required that this Company make formal claim against the Estate for the amount of the settlement.

Now, as you know, the residue of Mrs. Mason's Estate was left to various charities, including the church and the town of North Attleboro. This meant that if paid by the Estate the money would be deducted from the amounts received by the various charities.

Our board of directors discussed this question at some length and concluded that the Company would be placed in an untenable position from a public relation standpoint if we made claim against the Estate which would, in fact be a claim against the several charities.

It was, therefore, voted that this Company pay the amount of the settlement to the Commonwealth of Massachusetts and that no claim would be made against the Estate.

Frankly, it disturbs us to pay the amount of the settlement when we feel no tax is properly due by anyone, but it does help some to feel that this is in effect a donation to the various charities.

In 1956 petitioner paid the Commonwealth of Massachusetts the sum of $9,000 in accordance with its agreement with the State Tax Commission.

Petitioner regarded this payment as a gift to the charities named in the will of Ellen L. Mason.

Paragraph 13 of the supplemental stipulation of facts is as follows:

13. Mr. Robert P. Mason, who was the Vice-President and Treasurer of petitioner during the taxable year 1955, if called as a witness would testify as follows:

The question of reimbursement by the Estate of Ellen L. Mason was discussed between the representatives of said estate and petitioner at conferences. Mr. Mason recalls that the representatives of the estate felt that they should seek Probate Court approval in order to reimburse petitioner for the amount paid by it to the Commonwealth of Massachusetts pursuant to the settlement noted in Exhibit 5 [the Memorandum of Argeement with the Commonwealth]. Petitioner was reluctant to have the representatives seek probate approval because of what it felt would be adverse publicity. Thereupon, the representatives of the estate offered to pay 50% of the settlement without seeking probate approval.

After reflection, the petitioner felt that any reimbursement from the estate could be viewed as an action by the petitioner against the several charities designated as legatees in the will of Ellen L. Mason. Therefore, the petitioner decided to waive any claim it may have against the estate and to pay the full amount of the settlement as noted in Exhibit 5 from its own funds. The petitioner regarded the payment as a gift to the charities named in the will of Ellen L. Masson [sic].

Petitioner's main contention is that after paying the Commonwealth the $9,000 it had a valid claim against the estate of Ellen L. Mason for the reimbursment of the amount paid to the Commonwealth; that its board of directors decided not to make the claim against the estate on the ground that it would injure the public relations of petitioner; that by not making the claim for reimbursement against the estate, the latter had that much more in the residue to enable it to pay the legacies to the 13 charities mentioned in Article IV,

paragraph 7, of the will of Ellen L. Mason; and that this would in effect be a donation to the various charities.

Respondent's answer to petitioner's main contention that it be allowed a deduction for a charitable contribution is that Ellen L. Mason's last will and testament did not provide for payment to petitioner for inheritance tax assessed against it and, therefore, petitioner possessed no claim against the estate of Ellen L. Mason and, further, respondent contends that if the petitioner is to be allowed any benefit by reason of its payment to the Commonwealth, such benefit must be by means of a capital expenditure.

From the will involved in the instant proceeding, it appears that all death taxes, *with the exception of the taxes imposed on petitioner's stock*, are to be paid from the residue of the estate. Article VI of her will was primarily devoted to insuring that her estate would not be burdened by any taxes imposed by reason of holding petitioner's stock. In these circumstances we think it is immaterial that the executors of the estate offered to pay petitioner 50 percent of the settlement without seeking probate approval.

In any event, we do not think petitioner has made a contribution to charity. What it did was to compromise a claim made by the Commonwealth of Massachusetts for an inheritance tax due from petitioner. We fail to see how the payment to Massachusetts of such a compromised claim can be converted into a contribution to 13 charitable organizations by means of the devious route contended for by petitioner. This route in our opinion is based too much on pure conjecture.

Neither do we agree with petitioner's alternative contention that the money paid to the Commonwealth of Massachusetts constituted an ordinary and necessary business expense paid or incurred during the calendar year 1956 under section 162(a) of the Internal Revenue Code of 1954. The fact is that petitioner paid the $9,000 to the Commonwealth of Massachusetts as an *inheritance tax* and, under section 164(b)(4), I.R.C. of 1954,[1] no deduction shall be allowed for such taxes. The payment of $9,000 arose by reason of petitioner's restrictive clause in its articles of organization. Certainly the payment of the $45,000 to the estate of Ellen L. Mason was a capital expenditure as representing cost to petitioner of the 450 shares of stock. We think the payment of the $9,000 represents an additional cost of the stock and, as such, is a capital transaction.

---

[1] SEC. 164. TAXES.

(b) DEDUCTION DENIED IN CASE OF CERTAIN TAXES.—No deduction shall be allowed for the following taxes:

\*     \*     \*     \*     \*     \*     \*

(4) Estate, inheritance, legacy, succession, and gift taxes.

We hold that petitioner is not entitled to deduct the $9,000 paid to the Commonwealth of Massachusetts either as a charitable donation or as an ordinary and necessary business expense.

The parties agree that our holding on the $9,000 item automatically resolves the disallowance of the carryover from 1956 to 1957 of the amount of $744.28.

*Decision will be entered for the respondent.*